IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HANK ARKULARI,<br><br>          Plaintiff,<br><br>vs.<br><br>PRISON MEDICAL STAFF - JON DOE (UK), SCOTT R. FRAKES, Administration Director; and JEFFREY KASSELMAN, Medical Director;<br><br>          Defendants. | 8:22CV446<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Hank Arkulari's Amended Complaint, Filing No. 15, filed in response to the Court's previous Memorandum and Order (the "Initial Review Order"), Filing No. 14. The Court now conducts an initial review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). The Court's previous discussion of each of Plaintiff's potential claims will not be repeated here but is incorporated by this reference into the Court's initial review of Plaintiff's Amended Complaint. For the reasons discussed, Plaintiff's claims may proceed only against Defendant Jeffrey Kasselman in his individual capacity.

**I. REVIEW OF AMENDED COMPLAINT**

**A. Sufficiency of Original Complaint**

Plaintiff's original Complaint, Filing No. 1, brought claims against several, unnamed prison staff members and administrators in their official and individual capacity. The Court dismissed the claims against Defendants in their official capacities because such claims were barred by sovereign immunity. Filing No. 14 at 5. The Court also concluded that Plaintiff's claims against the "Prison Medical Staff" were subject to dismissal because the

claims failed to identify wrongdoing by any singular member or members of the Prison Medical Staff. *Id.* at 6. Plaintiff was nevertheless given leave to amend his Complaint to identify specific members of the prison medical staff and allege specific facts of their wrongdoing, provided such facts could be credibly alleged. *Id.* at 6. The Court also concluded that Plaintiff's claims against "Prison Medical Director" and "Prison Administration" were subject to dismissal.

**B. Summary of Amended Complaint**

Plaintiff brings this 42 U.S.C. § 1983 action against three defendants: Jeffrey Kasselman, named as the "Medical Director" for the Nebraska Department of Correctional Services (NDCS); Scott R. Frakes, "Prison Administration Director" for NDCS; and Jane/Jon Doe, identified as unknown Prison Medical Staff. Filing No. 15 at 2-3. Plaintiff sues each defendant in both their individual and official capacities. *Id.* at 2-3. Plaintiff was diagnosed with Hepatitis C shortly after he arrived at the NDCS on August 27, 2022. *Id.* at 14. Despite the diagnosis, Plaintiff alleges that Defendants failed to provide treatment for Hepatitis C. *See Id.* at 4, 14. Plaintiff asserts that failing to treat his Hepatitis C caused him to contract cirrhosis of the liver. *Id.* at 16. He also asserts that, without immediate treatment, the Hepatitis C is life threatening because Plaintiff has an increased risk of liver cancer, and the Hepatitis C may spread throughout his body. *Id.* at 16.

Plaintiff alleges that the Prison Medical Staff told Plaintiff they could not provide Hepatitis C treatment because they had to follow prison guidelines that excluded Plaintiff from treatment. *Id.* at 14. "Jon Doe" of the Prison Medical Staff told Plaintiff he did not meet requirements for treatment when Plaintiff first entered prison, that he would be placed on chronic care and be monitored, that treatment was expensive, and that Prison

Medical Staff had to follow protocols. *Id.* at 14-15. Jon Doe Prison Medical Staff provided no other explanation as to why Plaintiff did not qualify for medical treatment. *Id.* at 15. Plaintiff also asserts that Jon Doe Prison Medical Staff demonstrated a hostile attitude toward Plaintiff when he sought answers about medical treatment. *Id.* at 15. Plaintiff asserts he exhausted all prison remedies, but the responses to his grievances indicated that Plaintiff did not meet the criteria for treatment. *Id.* at 15. Plaintiff asserts that he never received Hepatitis C medical treatment, never saw Prison Medical Staff to be monitored, and "never came across any Hepatitis C committee." *Id.* at 15.

Plaintiff alleges Frakes decided which inmates received Hepatitis C treatment even though he lacked specialized medical training. *Id.* at 12. Plaintiff further alleges Frakes failed to ensure Plaintiff received professional medical care for Hepatitis C. *Id.* at 16.

Kasselman oversaw all medical decisions and decided which prisoners required the attention of a specialist. *Id.* at 13. Based on his guidelines and rules, Kasselman prohibited Plaintiff from receiving Hepatitis C treatment. *Id.* at 15. Plaintiff also alleges Kasselman violated his civil rights by failing to take reasonable measures to prevent Plaintiff's Hepatitis C from spreading throughout the prison. *Id.* at 12

In sum, Plaintiff alleges that Defendants violated his statutory and constitutional rights by denying him necessary Hepatitis C treatment. *Id.* at 3, 12. In so doing, Defendants deprived Plaintiff of treatment for a serious medical need. *Id.* at 12, 16. Plaintiff seeks declaratory relief, compensatory and punitive damages, and attorney's fees and costs. *Id.* at 16.

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within

4

the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon,* 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

#### A. Official Capacity Claims

Plaintiff again asserts claims against all Defendants in their official capacities. As stated in the Initial Review Order, Filing No. 14 at 5, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). In the Amended Complaint, Plaintiff seeks, in part, monetary damages from Defendants in their official capacities. To the extent Plaintiff sues Defendants in their official capacities for money damages, Plaintiff's claims are barred.

#### B. Individual Capacity Claims

Construed liberally, Plaintiff claims Defendants, in their individual capacities, were deliberately indifferent to Plaintiff's serious medical needs by preventing him from receiving necessary treatment for Hepatitis C. To establish an Eighth Amendment claim for deprivation of medical care, an inmate must allege that a prison official was deliberately indifferent to the inmate's serious medical needs. *Schaub v. VonWald*, 638

5

F.3d 905, 914 (8th Cir. 2011). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). "This requires a two-part showing that (1) the inmate suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Schaub*, 638 F.3d at 914. (internal quotations and citations omitted). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation and citation omitted).

> Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.

*Id.* at 914-15 (internal quotations and citations omitted). The Court considers whether the allegations in the Amended Complaint meet this high standard to state a claim against each Defendant.

### 1. Claims Against "Prison Medical Staff"

In its Initial Review Order, the Court noted that, in general, a plaintiff may not name fictitious parties as defendants in a lawsuit. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). However, dismissal of fictitious parties is only appropriate "when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). An action may proceed against a fictious party so long as the complaint makes "allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery."

6

*Est. of Rosenberg by Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995); *see also Salinas v. Clark*, No. 1:22-CV-159, 2023 WL 2345998, at *4 (E.D. Mo. Mar. 3, 2023) (permitting claims to proceed because plaintiff made specific allegations against John Doe defendants) (citing *Rosenberg*, 56 F.3d at 37). The Court previously concluded that Plaintiff's original Complaint failed to identify any specific, actionable allegations against any single member of the Prison Medical Staff. Filing No. 14 at 6. Accordingly, the allegations were insufficient to identify the fictitious party even after reasonable discovery. *Id.* at 6. The Court granted Plaintiff leave to amend his Complaint to identify specific members of the Prison Medical Staff and allege specific facts of their wrongdoing. *Id.* at 13-14.

The allegations in the Amended Complaint are still insufficient to identify any wrongdoing by a specific Prison Medical Staff member. Plaintiff alleges Medical Staff, including "Jon Doe Prison Medical Staff," denied Plaintiff treatment because Medical Staff had to follow prison guidelines. Filing No. 15 at 14. Plaintiff also asserts that Jon Doe Prison Medical Staff demonstrated a hostile attitude toward Plaintiff and failed to explain why Plaintiff did not meet the criteria for Hepatitis C treatment. *Id.* at 15. Although narrowed to "Jon Doe," these broad allegations, even when considered with the materials attached to Plaintiff's original Complaint,[1] do not make specific allegations against any specific member of the Prison Medical Staff. The allegations are still insufficient to identify the party even after reasonable discovery.

---

[1] The local rules provide, "In considering pro se litigants' amended pleadings, the court may consider the amended pleading as supplemental to, rather than as superseding, the original pleading, unless the pleading states that it supersedes the prior pleading." NECivR 15.1(b).

Moreover, the allegations against Prison Medical Staff are not actionable. Plaintiff's principal complaint is that Prison Medical Staff failed to provide timely treatment for his Hepatitis C. The Eighth Circuit has held that "[w]hen the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (cleaned up; emphasis in original). A decision to initially administer conservative treatment does not necessarily constitute deliberate indifference.[2] Differences of opinion, mistakes, and even medical malpractice do not meet the exacting standard of deliberate indifference. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) ("At best, [the plaintiff's] allegations state a difference in opinion between himself and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation.").

Additionally, to state a valid § 1983 claim against each named individual defendant, Plaintiff must provide factual allegations describing how each defendant was directly responsible or personally involved in actions that deprived him of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). However, Plaintiff makes no allegation that any member of the Prison Medical Staff personally made the decision to withhold treatment. Plaintiff repeatedly asserts that Jon Doe Prison Medical Staff told him

---

[2] *See, e.g., Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 386 (8th Cir. 2014) (jail physician and nurse were not deliberately indifferent when they began logging inmate's daily blood pressure after inmate complained, when they delayed prescribing medication after several high readings, and when they failed to write a second prescription immediately after the first one went missing); *Jenkins v. Cty. of Hennepin*, 557 F.3d 628, 632 (8th Cir. 2009) (holding defendant who decided to postpone x-ray based on medical judgment that injury was not urgent entitled to summary judgment); *Blondheim v. County of Olmsted*, 47 Fed. App'x 766 (8th Cir. 2002) (unpublished) (doctors at correctional facility were not deliberately indifferent by treating inmate's torn ACL conservatively over 4 years, mainly with Tylenol and ace bandages, even though they knew outside orthopedic surgeon had recommended surgery).

they had to follow prison guidelines for determining which inmates receive Hepatitis C treatment. See Filing No. 15 at 14-15. The materials attached to the original Complaint also suggest that Prison Medical Staff regularly evaluated Plaintiff to determine whether he met criteria. See, e.g., Filing No. 1 at 20; Filing No. 1 at 21; Filing No. 1 at 31. Plaintiff's allegations thus fail to allege that any member of the Prison Medical Staff was personally responsible for determining whether Plaintiff received treatment, much less that any member of the Prison Medical Staff was deliberately indifferent to Plaintiff. Accordingly, the Amended Complaint fails to meet the exacting standard of stating a claim against any nonpolicy making member of the Prison Medical Staff.

### 2. Claims Against Scott Frakes & Jeffrey Kasselman

For Plaintiff's claims to proceed against Frakes and Kasselman, Plaintiff must first sufficiently allege each Defendant's personal involvement in the alleged deprivation. To show personal involvement, Plaintiff must allege the Defendants were not only "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed," but that he "also dr[e]w the inference." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Davis v. Oregon Cty.*, 607 F.3d 543, 548-49 (8th Cir. 2010)). Prison supervisors can incur liability for their "personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Luckert v. Dodge Cnty.*, 684 F.3d at 817 (citing *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir. 1993)).

Plaintiff has not sufficiently alleged that Frakes had any personal involvement in the alleged violation, nor has Plaintiff alleged that Frakes tacitly authorized any constitutional violation. Although Plaintiff vaguely alleges that Frakes lacked medical

training but decided which prisoners received treatment, his only explanation for this allegation is that Frakes was "responsible for ensuring all Prison Medical Staff" comply with the Constitution. Filing No. 15 at 13. Plaintiff also alleges that Frakes "failed to oversee" that Plaintiff needed professional medical care. *Id.* at 16. These allegations are too vague to support a claim against Frakes. Plaintiff cannot rely on his claims against prison employees to support a claim against Frakes because "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). Moreover, Frakes' general responsibilities for overseeing prison operations are not sufficient to show he had personal involvement in any wrongdoing. *See Rosenberg*, 56 F.3d at 37 (holding "[t]he general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability" in a civil rights action). Accordingly, Plaintiff has not stated a claim against Frakes.

For purposes of initial review, Plaintiff's claims against Kasselman are a closer question. As noted above, a claim of deliberate indifference to medical needs carries both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481–82 (8th Cir. 2008); *Albertson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006); *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). The Amended Complaint satisfies the objective component because Plaintiff alleged he suffered from Hepatitis C. Hepatitis C is a serious medical need. *See Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004);

*Clay v. Corizon Health LLC*, No. 4:21CV877, 2021 WL 4963520, at *5 (E.D. Mo. Oct. 26, 2021). Plaintiff also alleges that, because of the lack of treatment for Hepatitis C, he suffers from cirrhosis of the liver and has an increased risk of contracting liver cancer. Filing No. 15 at 16. Thus, for the purposes of initial review, the objective component is met.

To meet the subjective component, "the failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996); *see also Roberson v. Goodman*, 293 F. Supp. 2d 1075, 1080 (D.N.D. 2003), *aff'd*, 114 F. App'x 772 (8th Cir. 2004). To state a claim for relief for failure to treat Hepatitis C, courts have held that a Plaintiff must allege a specific risk of severe illness and failure to treat, *see, e.g., Hankins v. Russell*, No. 4:15-cv-00697, Doc. No. 4 (E.D. Mo. May 5, 2015), or specific details of an arbitrary policy in treating Hepatitis C patients, *see Postawko v. Missouri Dep't of Corr.*, No. 2:16-CV-04219-NKL, 2017 WL 1968317, at *8 (W.D. Mo. May 11, 2017); *Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *16 (M.D. Pa. Jan. 3, 2017).

Plaintiff asserts that Kasselman was the policymaker, that he oversaw all medical decisions, and that he determined which prisoners receive treatment. Filing No. 15 at 13. Plaintiff also alleges that Kasselman's direction prohibited Plaintiff from receiving Hepatitis C medication. *Id.* at 15. The failure to treat Plaintiff's Hepatitis C caused Plaintiff's cirrhosis of the liver and exposed him to increased risk of liver cancer. *Id.* at 16. The Court recognizes that several courts have concluded that a defendant is not

deliberately indifferent for treating Hepatitis C through monitoring but not drug therapy. *See, e.g., Carlson v. Weber*, No. 08-CV-4101, 2010 WL 3701359, at *6 (D.S.D. Sept. 14, 2010). However, as noted in the Initial Review Order, many of these courts have reached this conclusion only after permitting the case to proceed to discovery and summary judgment. *See, e.g.*, *Doering v. Kelley*, No. 5:17CV00125, 2018 WL 1885506, at *5 (E.D. Ark. Mar. 27, 2018), *report and recommendation adopted*, No. 5:17-CV-125, 2018 WL 1875477 (E.D. Ark. Apr. 19, 2018), aff'd, 759 F. App'x 556 (8th Cir. 2019); *Carlson*, 2010 WL 3701359, at *6. At this stage in the proceedings, Plaintiff has alleged enough for Plaintiff's claim against Kasselman to proceed.

The Court cautions Plaintiff that this is only a preliminary determination based on his allegations and is not a determination of the merits of his claims or potential defenses thereto. The Eighth Circuit has held that "[w]hen the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (cleaned up; emphasis in original). To establish this effect, Plaintiff will eventually be required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment . . . .'" *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

**C. Request for Appointment of Counsel**

The Court denied Plaintiff's previous Motion to Appoint Counsel, without prejudice to reassertion. Filing No. 14 at 13. Within the Amended Complaint, Plaintiff requests that the Court reconsider whether to appoint counsel if the Court later finds that Plaintiff's case raises "important or complex issues." Filing No. 15 at 17. The Court does not interpret

this statement to be a renewed motion to immediately appoint counsel. However, to the extent Plaintiff again requests appointment of counsel, the request is denied, without prejudice to reassertion. As stated in its previous Memorandum and Order, "[r]elevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)). The Court has carefully reviewed the record and finds there is no need to appoint counsel at this time. Subsequent discovery and proceedings may provide the Court with sufficient reason to appoint counsel at a later date.

### IV. CONCLUSION

In light of the liberal construction afforded to pro se litigants' pleadings, the Court concludes that Plaintiff has sufficiently alleged a claim for deliberate indifference to Plaintiff's serious medical needs against Defendant Jeffrey Kasselman in his individual capacity. Accordingly, this claim may proceed to service of process. All official capacity claims and all other claims against all other Defendants are dismissed.

IT IS THEREFORE ORDERED that:

1.  Only Plaintiff's claim for deliberate indifference to medical needs against Jeffrey Kasselman, in his individual capacity, may proceed.

2.  Plaintiff's claims against Scott R. Frakes, and Jane/Jon Doe, identified as unknown Prison Medical Staff, in their individual and official capacities, and against Jeffrey Kasselman in his official capacity, are dismissed.

3.  The Clerk of Court is directed to terminate Scott R. Frakes, and Jane/Jon Doe, identified as unknown Prison Medical Staff, as defendants in this case. The Clerk of Court is further directed to update the caption to reflect that Jeffrey Kasselman, Medical Director, in his individual capacity, is the only remaining defendant.

4.  For service of process on Kasselman, in his individual capacity, the Clerk of Court is directed to complete a summons and USM-285 form for Kasselman using the following address:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509.

5.  The Clerk of Court is further directed to complete a second set of summons and USM-285 forms for Kasselman in his individual capacity using the address contained in Case No. 4:23CV3214, Filing No. 22 at 3, and to file under seal any document containing Kasselman's personal address.

6.  The Clerk of Court shall forward both sets of summons forms and USM-285 forms together with sufficient copies of the Complaint, Filing No. 1, and the Amended Complaint, Filing No. 15, and this Memorandum and Order to the United States Marshals Service.

7.  The Marshals Service shall serve Defendant Kasselman in his individual capacity by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2);

Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

8. The Marshals Service shall also serve Defendant Kasselman in his individual capacity by certified mail or other authorized method of service at the address indicated above. See Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

9. For service by certified mail or designated delivery service, the Marshals Service shall serve Defendants within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service. See Neb. Rev. Stat. § 25-505.01(1).

10. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

11. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until February 5, 2026, to complete service of process.

12. Plaintiff is hereby notified that failure to obtain service of process on the Defendants within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

13. The Clerk of Court is directed to set a case management deadline in this case with the following text: **February 13, 2026**: service of process to be completed.

14. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 14th day of November, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge